UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PROGRESSIVE NORTHERN**
**INSURANCE COMPANY,**

    Plaintiff,

v.                                     Case No.  8:06-cv-1252-T-30MSS

**THERM TECHNOLOGY CORPORATION,**
**MONACO COACH CORPORATION,**
**LAZY DAYS R.V. CENTER, INC.,**

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Monaco Coach Corporation's (**"Monaco"**) Motion for Partial Summary Judgment (Dkt. 51), joined in by Lazy Days R.V. Center, Inc. (**"Lazy Days"**) and Therm Technology Corporation (**"Therm"**); and Plaintiff Progressive Northen Insurance Company's (**"Progressive Northern"**) Response in opposition to the same (Dkt. 73).  The Court, having considered the motions, memoranda, and supporting documentation, and being otherwise fully advised in the premises, determines that Defendants' motion should be granted in part and denied in part.

## Background

This products liability action arises from a fire occurring in Paducah, Kentucky, on or about February 2, 2004.  Progressive Northern alleges that the fire was caused by a

defective heating unit manufactured by Therm and permanently installed in a 2001 Monaco Diplomat Motor Home (the **"Motor Home"**) manufactured by Monaco. In its Complaint, Progressive Northern alleges that its insured, Paducah Paving Company, purchased the motor home from Lazy Days, a dealer located in Seffner, Florida. Progressive Northern further alleges that the fire destroyed the Motor Home, four other motor vehicles, and a boat stored on its insured's property. After compensating its insured for the damages, Progressive Northern filed the instant lawsuit as subrogee of Paducah Paving Company.

In its Motion for Partial Summary Judgment, Monaco points out a number of errors and inconsistencies in the Complaint that have been uncovered through discovery. Plaintiff has admitted that the Motor Home is owned by Tony and Leslie Davenport individually, not Paducah Paving Company. Further, the Davenport's Motor Home was insured under a policy issued by Progressive Express Insurance Company (**"Progressive Express"**), a Florida corporation that is a separate and distinct corporate entity from Progressive Northern. Progressive Express, not Plaintiff Progressive Northern, paid the Davenports for damages to the Motor Home resulting from the fire. Accordingly, Monaco argues that Plaintiff lacks standing to claim damages for the Motor Home.

Progressive Northern admits to the factual inaccuracies uncovered by Monaco. Progressive Northern claims that, due to an administrative error, Progressive Express was not included as a plaintiff in this action. Progressive Northern admits it insured the other vehicles damaged by the fire, but did not insure the Motor Home. As a result, it seeks to

move for leave to add Progressive Express Insurance Company to this action and amend the Complaint accordingly. Monaco argues that Progressive Northern does not have standing to seek this relief and that any attempted amendment would be futile due to the application of the economic loss rule and/or the statute of limitations.

## Discussion

### I.     Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions,

answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

**II.    Legal Analysis**

Monaco argues that Progressive Northern lacks standing to claim damages against the Motor Home as it has suffered no injury in fact. The Court agrees that summary judgment is warranted in favor of Monaco, Therm, and Lazy Days barring Progressive Northern's claims for damages against the Motor Home. However, the question now before the Court is whether Progressive Express can be added as a plaintiff to assert claims against the defendants.

### A.     Standing to Substitute

The Sixth Circuit considered similar facts in Zurich Ins. Co. v. Logitrans, 297 F.3d 528 (6th Cir. 2002).  In that case, due to attorney error, the wrong insurer was mistakenly named as subrogee of a property owner in a negligence action arising from damages caused by a warehouse fire.  Id. at 530.  Twenty days before trial, the defendant filed a motion *in limine*, arguing that the insurer was not the true subrogee and that it should be barred from offering evidence at trial.  Id.  The insurer did not dispute that it was not the proper plaintiff, and moved to substitute the appropriate insurer as the real party in interest.  Id.

The Sixth Circuit upheld the district court's decision denying the motion to substitute the real party in interest on the grounds that it lacked Article III standing to hear the motion. Id. at 531.  Because the plaintiff had not suffered an injury in fact, the court held it had no standing to bring the action or make a motion to substitute the real party in interest.  Id.  As the applicable statute of limitations had run, the actual insurer was barred from pursuing its claims against the defendants.  Id. at 530.  In support of its holding, the court reasoned that:

> [a]n attorney made a mistake and filed the action in the name of Zurich Switzerland, when Zurich Switzerland had no claims whatsoever against the defendants, and no Article III standing to sue.  American Guarantee, a totally separate entity, which was not vigilant in protecting its claims, cannot now benefit from Zurich Switzerland's mistake so as to take advantage of the suspension of the limitations period.

Id. at 532.

In the instant case, Progressive Northern lacks standing to pursue claims for damages to the Motor Home.  However, it does not lack standing to pursue its claims for damages to

the other vehicles. Thus, unlike the plaintiff in Zurich, Progressive Northern does not lack any "claims whatsoever against the defendants." The Court will therefore consider the potential claims Progressive Express could assert against the defendants if it was added (or intervened) as a party to this action.

### B. Tort Claims

Monaco argues that any tort claims asserted by Progressive Express would be barred by Florida's economic loss rule. Florida's economic loss rule is "a court-created doctrine which prohibits the extension of tort recovery for cases in which a product has damaged only itself and there is no personal injury or damage to 'other property,' and the losses or damage are economic in nature." Moransais v. Heathman, 744 So. 2d 973, 979 (Fla. 1999). The essence of early decisions in Florida courts applying the rule was "to prohibit a party from suing in tort for purely economic losses to a product or object provided to another for consideration" based on the rationale that "contract principles [are] more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage." Id. at 980. The rule was primarily intended to limit actions in the products liability context. Id. at 983.

Both Florida courts and the United States Supreme Court have considered facts where, as here, a product allegedly causes damages to itself and "other property." In Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 877, 117 S.Ct. 1783, 1785 (1997), an owner of a fishing vessel sought recovery for damages arising from an engine room fire

caused by a defective hydraulic system on the ship. The Court held the plaintiff could recover for equipment added to the ship after its initial sale, but noted that the economic loss rule barred recovery for the ship itself. 570 U.S., at 884, 117 S.Ct., at 1788. The Court considered lower courts' holdings that it is not a component part, but a vessel placed in the stream of commerce by a manufacturer and/or distributors, that is the 'product' causing the harm for purposes of the economic loss rule, and cited to its prior decision in East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 867, 106 S.Ct. 2295, 2300 (1986), stating

> [s]ince all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability.[1]

The Court noted that "[i]nitial users, when they buy, typically depend upon a manufacturer's primary business skill, namely, the assembly of workable product components into a marketable whole." Id.[2]

In Comptech International, Inc. v. Milam Commerce Park, Ltd., 753 So. 2d 1219, 1221 (Fla. 1999), a plaintiff tenant sought damages for its computers which were damaged during renovations to warehouse space it was leasing. While the court acknowledged that the term "other property" was not truly applicable to the facts as in a products liability action,

---

[1] The Court also noted its holding in East River that "an admiralty tort plaintiff cannot recover for the physical damage the defective product causes to the 'product itself'; but the plaintiff can recover for physical damage the product causes to 'other property.'" 520 U.S., at 877, 117 S.Ct., at 1785.

it considered that the "product" purchased by the tenant was renovation of the warehouse, and that the computers were "other property," and thus recovery for damages to the computers was not prohibited by the economic loss rule. Id. at 1226-27.

In the instant case, Progressive Northern acknowledges that Florida's economic loss rule would bar claims tort claims for damages to the Motor Home. However, Progressive Northern argues that Kentucky law rather than Florida law should apply to these claims. It is unclear whether Kentucky would apply the economic loss rule to consumer purchases. In Mt. Lebanon Personal Care Home v. Hoover Universal, Inc., 276 F.3d 845, 849 (6th Cir. 2002), the Sixth Circuit considered the following:

> A large majority of jurisdictions in this country have adopted the economic loss rule. *Id.* at § 13.11[1] n. 1.4-1.5. While a small minority of these jurisdictions have limited the rule to business purchases, most apply it to both business and consumer purchases. *Id.* at § 13.11[3]. In *Miller's Bottled Gas, Inc. v. Borg-Warner Corp.,* 955 F.2d 1043, 1050 (6th Cir.1992), we anticipated that the Kentucky Supreme Court would adopt the economic loss rule "in a product liability action based upon negligence."
>
> Two years later, the Kentucky Supreme Court decided *Real Estate Marketing, Inc. v. Franz,* 885 S.W.2d 921 (Ky.1994). In *Franz,* subsequent purchasers of a home sued the builder for structural defects under warranty, negligence, and statutory theories. *Id.* The trial court granted the builder's motion to dismiss and the case *849 was appealed to the Kentucky Supreme Court. *Id.* It reversed, reasoning that the Franzes should be able to assert their statutory theory. While the Kentucky Supreme Court agreed with the trial court that the Franzes could not sustain a negligence claim, it did so because there was no "damaging event," not because their claim was barred by the economic loss doctrine. *Id.* at 926. Indeed, in its decision, the Kentucky Supreme Court expressly refused to extend *Franz* to a Kentucky Court of Appeals decision which had adopted the economic loss doctrine. *Id.*
>
> Thus, *Franz* forces us to reconsider our earlier ruling in *Miller's Bottled Gas.* In *Franz,* the Kentucky Supreme Court declined to extend the economic loss rule to an end-consumer's second-hand purchase of a house. We think, then, that *Franz* probably answers in the negative the question of whether the economic loss doctrine

>applies to consumer purchases in Kentucky. Yet, as we have stated, some courts decline to extend the economic loss rule to consumer purchases, but apply it to business purchases. *Cova v. Harley Davidson Motor Co.,* 26 Mich.App. 602, 182 N.W.2d 800, 804 (1970), Frumer & Friedman, § 13.11[3] n. 6-9 and accompanying text. *Franz,* then, does not tell us whether the Kentucky Supreme Court would apply the economic loss doctrine to tort claims like the one before us stemming from a business purchase.

Although it is unclear how the Kentucky Supreme Court would apply the economic loss rule to the instant facts, Kentucky's statute of limitations bars causes of action for property damage which are not filed within two years from the time the cause of action accrued. See KY. REV. STAT. ANN. § 413.125. While Progressive Northern argues that claims added by Progressive Express in the form of an amended complaint should relate back to the filing of Progressive Northern's complaint for purposes of the statute of limitations, it has cited to no authority in support of this argument.

Progressive Express's cause of action accrued on the date its insured suffered loss, February 2, 2004. For purposes of the statute of limitations, any claim asserted by Progressive Express would relate back to the date it moved the Court to substitute it as the property party in interest to claim damages to the Motor Home. As the statute of limitations under Kentucky law expired on February 2, 2006, Progressive Express would be barred from claiming damages to the motor home in Kentucky. Like the plaintiff in Zurich, Progressive Express, which was not vigilant in protecting its claims, cannot now benefit from Progressive Northern's mistake so as to take advantage of the suspension of the limitations period.

Moreover, Progressive Northern's tort claims would be barred under both Florida and Kentucky law. In Florida, the claims would be barred by the economic loss rule. In Kentucky, the claims would be barred by the statute of limitations. As any tort claims for damages to the Motor Home would be futile, the Court denies Progressive Northern's request for leave to add Progressive Express as a plaintiff to assert such claims.

**C.     Breach of Warranty Claims**

Monaco argues that warranty coverage was provided for the Motor Home for a period of twelve (12) months or 24,000 miles, whichever occurred first. The coverage began on October 9, 2000, upon purchase of the Motor Home. The warranty had expired at the time of the fire, which occurred over three years later. Progressive Northern has not disputed these facts and has not argued Progressive Express could assert a breach of warranty claim against Monaco.

Progressive Northern does argue Progressive Express could assert a breach of warranty action against Lazy Days. Progressive Northern argues the disclaimer of warranty in the Buyer's Order executed by Lazy Days and the Davenports is not conspicuous. Pursuant to Section 671.201(10) of the Florida Statutes,

> [a] term or clause is "conspicuous" when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is conspicuous if it is in larger or other contrasting type or color. But in a telegram any stated term is conspicuous. Whether a term or clause is conspicuous or not is for decision by the court.

The Lazy Days warranty disclaimer is located on the reverse page of the Buyer's Order and printed in capitalized letters. Three statements on the front of the order refer the purchaser to the reverse page, one of which is written in small capitalized letters. In <u>Rudy's Glass Const. Co. v. E.F. Johnson Co.</u>, 404 So. 2d 1087, 1090 (Fla. 3d DCA 1981), a Florida appellate court held a disclaimer on the reverse page of a document, accompanied by a similar reference on the front page, to be conspicuous. Upon review of the Buyer's Order, the Court holds the warranty disclaimer to be conspicuous. Thus, Progressive Express would be barred from asserting a breach of warranty claim for alleged damages to the Motor Home.

Neither party has addressed or argued whether Progressive Express could assert a claim for breach of warranty against Therm. There is no evidence in the record regarding the existence of a warranty or disclaimer of warranties by Therm. Thus, the Court will allow the parties fourteen (14) days to supplement the record accordingly.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant Monaco Coach Corporation's Motion for Partial Summary Judgment (Dkt. 51) is **GRANTED in part and DENIED in part** as set forth herein.

2. Partial Summary Judgment is hereby granted in favor of Monaco Coach Corporation, Therm Technology Corporation, and Lazy Days R.V. Center, Inc., barring all of Progressive Northern's claims for damages to the subject 2001 Monaco Diplomat Motor Home.

3. Plaintiff's request for leave to add Progressive Express Insurance Company as a plaintiff is **DENIED** to the extent it seeks to assert tort claims against any of the defendants for damages to the Motor Home.

4. Plaintiff's request for leave to add Progressive Express Insurance Company as a plaintiff is **DENIED** to the extent it seeks to assert breach of warranty claims against Monaco Coach Corporation and Lazy Days R.V. Center, Inc.

5. The parties have fourteen (14) days to supplement the record regarding the existence of a warranty or disclaimer of warranties for the subject heating unit manufactured by Therm Technology Corporation.

**DONE** and **ORDERED** in Tampa, Florida on December 21, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2006\06-cv-1252.mt partial sj.frm